**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

BRADLEY TILLEY,                              )
                                             )
        Plaintiff,                    )
                                             )
v.                                           )     Case No. 24-CV-0460-CVE-SH
                                             )
SCOTT WALTON, Sheriff of Rogers County,      )
in his official capacity,                    )
                                             )
        Defendant.                    )

**OPINION AND ORDER**

Before the Court is the motion to dismiss by defendant Scott Walton, Sheriff of Rogers County, in his official capacity (Dkt. # 38). On September 21, 2025, plaintiff Bradley Tilley filed a third amended complaint, alleging violations of 42 U.S.C. § 1983 in that municipal officials allegedly used excessive force in violation of his Fourth Amendment rights, created an assaultive environment, denied him access to medical care in violation of his Fourteenth Amendment rights, and failed to train and supervise jail staff. Dkt. # 34, ¶¶ 56-171. Defendant argues that plaintiff fails to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), in that plaintiff fails to plead with sufficient specificity that any of the alleged constitutional violations were connected to a policy, custom, or practice of Rogers County—as is required of a pleading against a sheriff being sued in his official capacity. Dkt. # 38, at 1-3. Nor does plaintiff identify a pattern of similar instances that demonstrate deliberate indifference by defendant, such that holding the municipality liable would be appropriate under Monell v. New York City Department of Social Services, 436 U.S. 658 (1978). Defendant asks the Court to dismiss plaintiff's third amended complaint and deny leave to amend on the grounds that amendment would be futile and unduly prejudice defendant. Plaintiff responds that he has properly pled that defendant has promulgated

policies and customs that have led to maintaining an overcrowded jail, as well as undertraining and undersupervising staff, which caused employees to violate plaintiff's constitutional rights and which caused his subsequent injuries. He argues that although the constitutional violations were carried out by municipal employees, a pattern of unconstitutional behavior by those employees creates a reasonable inference that the municipality is engaging in deliberate indifference, such that the municipality can be held liable. Even in the absence of such a pattern, plaintiff asserts that a clear consequence of a lack of training and oversight of officers by defendant highly predictably and plainly obviously would lead to violations of plaintiff's constitutional rights. In the alternate, plaintiff requests that the Court grant him leave to file a fourth amended complaint if the Court finds that he does not state a claim.

## I.

The facts of this case arise from plaintiff's arrest, which took place on or about October 14, 2022. Dkt. # 34, ¶ 11. Plaintiff alleges that while driving, he was stopped by a member of the Talala Police Department on suspicion of speeding. Id. ¶ 12. Following the stop, he was arrested and eventually charged for speeding, operating his motor vehicle with an expired registration, carrying a firearm while under the influence, and driving under the influence. Id. ¶ 13. Plaintiff was transported to Rogers County jail, where, while he was completing intake, he had an altercation with deputy Kirk Wahlgren. Id. ¶¶ 18-20. Plaintiff asserts that while standing by the booking window of the jail with his hands handcuffed behind his back, he was asked a series of questions, including whether he would submit to a breathalyzer test to determine his level of intoxication, and he invoked his right to assistance of counsel. Id.

Plaintiff alleges that while he was standing at the intake window, Wahlgren, who was on the same side of the window, moved closer to plaintiff, standing directly next to him, and slammed his

2

finger into the desk of the booking window for emphasis. Id. ¶ 22. Plaintiff states that he stepped back, at which time Wahlgren grabbed plaintiff's head and brought him to the ground, landing on top of plaintiff's hands, which were handcuffed behind his back, and causing injuries to his back that left him unable to use his legs. Id. ¶¶ 22-24, 28. Plaintiff was then placed by jail staff in the "WRAP," a full-body restraining system that disables an individual and prevents them from moving. Id. ¶¶ 31-32. He was then moved to a restraining chair, where he remained for two hours after the altercation. Id. ¶¶ 36, 38. Despite plaintiff's repeated requests for medical attention for his back and making known to a nurse that he could not feel his legs, he was not permitted to seek medical care at that time. Id. ¶¶ 40, 42. Plaintiff alleges that he was told that if he refused food for three days, he would receive medical care. Id. ¶¶ 44. Plaintiff proceeded to refuse food for three days, at which point plaintiff received a back X-ray.[1] Id. ¶ 46. Following a preliminary hearing and bond determination, plaintiff posted bond and was released from jail. Id. ¶ 47. Plaintiff asserts that he was brought to the exit of the jail in a wheelchair then hoisted up to walk out of the jail by guards on either side. Id.

Following plaintiff's release, the charges of operating a motor vehicle with an expired registration and carrying a firearm while under the influence were dismissed. Id. ¶ 14. He pled guilty to the misdemeanor charges of speeding and operating a motor vehicle while under the influence. Id. ¶ 61(i). Also after plaintiff's release, Wahlgren completed a "Custody Division Use of Force Report Form," detailing the incident from his perspective. Id. ¶ 48 (citing Dkt. # 34-1).

---

[1]     The complaint is silent as to what the X-ray revealed. Plaintiff alleges that Wahlgren slamming plaintiff on the ground with plaintiff's hands cuffed behind his back caused injuries to his vertebrae. Dkt. # 34, ¶ 23. It is unclear whether injuries to plaintiff's vertebrae were revealed by the X-ray imaging, or whether the delay in X-ray imaging caused any greater damage than the initial injury.

In September 2024, plaintiff filed suit in this Court against defendant, in his official capacity as Sheriff of Roger's County, alleging claims arising under 42 U.S.C. § 1983. Dkt. # 2. Plaintiff then filed an amended complaint, as a matter of course (Dkt. # 10), which defendant moved to dismiss for failure to state a claim (Dkt. # 14). Following briefing on the motion, the Court granted defendant's motion and dismissed plaintiff's amended complaint without prejudice, directing plaintiff to file a second amended complaint, separately stating and number his claims. Dkt. # 21, at 11. Plaintiff then filed a second amended complaint, following the Court's instructions (Dkt. # 22), which defendant again moved to dismiss for failure to state a claim (Dkt. # 25). Plaintiff sought the Court's leave to file a third amended complaint to address the deficiencies raised in defendant's second motion to dismiss (Dkt. # 29), which the Court granted (Dkt. # 33).

Plaintiff subsequently filed his third amended complaint (Dkt. # 34), in which he alleged five claims, under § 1983, against defendant for a violation of plaintiff's Fourth Amendment right to be free of excessive use of force, the creation of an "assualtive environment," a violation of plaintiff's Fourteenth Amendment right to be free from cruel and unusual punishment as a pretrial detainee by failing to provide him with immediate access to medical care, the failure to train jail employees, and the failure to supervise jail employees. Defendant moved to dismiss for failure to state a claim, asserting that plaintiff's third amended complaint fails to allege that the Rogers County Sheriff's Office (RCSO) instituted any improper custom, policy, or practice that caused plaintiff's injuries. Dkt. # 38, at 6-12. Defendant also argues that plaintiff fails to sufficiently allege claims of both failure to train and failure to supervise jail staff, in that plaintiff does not demonstrate that defendant acted with deliberate indifference. Id. at 12-15. Plaintiff responded (Dkt. # 40), and defendant replied (Dkt. # 41). The motion is ripe for review.

**II.**

When a party moves to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court must determine whether the claimant has stated a claim upon which relief can be granted. To survive a motion under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). The Tenth Circuit has interpreted the plausibility requirement to mean that if the allegations contained in a complaint "are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs 'have not nudged their claims across the line from conceivable to plausible.'" Robbins v. Okla. ex. rel. Dep't of Hum. Servs., 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting Twombly, 550 U.S. at 570). The allegations must also "be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim to relief." Id. (footnote omitted). Put differently, for a claim to survive a Rule 12(b)(6) motion, there must be "more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, "mere 'labels and conclusions' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim." Kan. Penn Gaming, LLC v. Collins, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting Twombly, 550 U.S. at 555); see also Mitchell v. King, 537 F.2d 385, 386 (10th Cir. 1976) ("A motion to dismiss under Fed. Rules Civ. Proc., rule 12(b) admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.").

"The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient

to state a claim for which relief may be granted." Tal v. Hogan, 453 F.3d 1244, 1252 (10th Cir. 2006) (quoting Sutton v. Utah State Sch. for the Deaf & Blind, 173 F.3d 1226, 1236 (10th Cir. 1999)). The facts alleged "must be enough to raise a right to relief above the speculative level, on the assumption that all of the complaint's allegations are true (even if doubtful in fact)." Twombly, 550 U.S. at 555 (citation omitted) (citing 5 WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 1216 (3d ed. 2004)). For the purposes of making a dismissal determination, a court must accept as true all well-pleaded allegations in the complaint and construe the allegations in the light most favorable to the claimant. Iqbal, 556 U.S. at 678-79.

### III.

Defendant moves to dismiss for failure to state a claim upon which relief can be granted. Specifically, defendant asserts that plaintiff has failed to plead with sufficient specificity that a custom, policy, or practice promulgated by defendant was enacted with deliberate indifference to the rights of citizens, and that the custom, policy, or practice caused plaintiff's injuries. Dkt. # 38, at 6-12. Defendant also argues that plaintiff has failed to plead sufficient facts to plausibly plead theories of liability as to defendant's failure to train or failure to supervise. Id. at 12-15. Finally, defendant asks that if the Court grants its motion, leave to amend be denied on the grounds that plaintiff has had three opportunities to amend his complaint, and further amendment would be futile and unduly prejudicial. Id. at 15-16.

Plaintiff's claims arise under § 1983. Section 1983 creates a cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983; Becker v. Kroll, 494 F.3d 904, 913 (10th Cir. 2007). When a claim is brought

6

against a party in his official capacity, that "person" acts a local government unit that can be found liable for damages under § 1983 so long as its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury." Monell, 436 U.S. at 694. As a result, the Supreme Court "require[s] a plaintiff seeking to impose liability on a municipality under § 1983 to identify a municipal 'policy' or 'custom' that caused the plaintiff's injury," which "ensures that a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403-04 (1997). It is not enough for a plaintiff to allege that the unconstitutional actions of a government employee caused his injury. Id. at 403 ("A municipality may not be held liable under § 1983 solely because it employs a tortfeasor." (citing Monell, 436 U.S. at 692)). Liability attaches to the municipality when deliberate action by the municipality is the "moving force" behind the injury alleged. Id. at 400. The policy must also be "so permanent and well settled as to constitute a 'custom or usage' with the force of law." Brammer-Hoelter v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189 (10th Cir. 2010) (quoting City of St. Louis v. Praprotnik, 485 U.S. 112, 127 (1988)). In essence, this becomes a three-part test requiring a plaintiff to allege facts that show the existence of "(1) an official policy or custom, (2) causation, and (3) deliberate indifference." Lucas v. Turn Key Health Clinics, LLC, 58 F.4th 1127, 1145 (10th Cir. 2023). "In the Tenth Circuit, while unusual, municipal liability may exist without individual liability . . . ." Id. at 1144.

Plaintiff pursues the following theory of liability against defendant, in his official capacity as sheriff: defendant adopted an official policy to keep the jail, in which plaintiff was held, overpopulated, which led to understaffing and a rise in tension between staff and inmates that caused

7

Wahlgren to use excessive force and created an "assaultive environment." Dkt. # 40, at 6, 10-11. Defendant also adopted an official policy of offering inmates inadequate medical care. Id. at 11. Finally, because defendant maintained a policy of inadequately training and insufficiently supervising jail staff, plaintiff suffered from violations of his Fourth and Fourteenth Amendment rights. Id. at 12-14. The Court addresses each of plaintiff's claims in turn.

**A.    Whether Plaintiff Sufficiently Pleads the Existence of a Municipal Policy or Custom with a Direct Causal Link to Plaintiff's Injuries**

*1.    Use of Excessive Force*

Plaintiff argues that he has sufficiently alleged that the RCSO maintains "an unconstitutional policy and custom of using excessive force against inmates and citizens who are in the Sheriff's custody/care." Dkt. # 40, at 10. Defendant contends that plaintiff fails to identify any specific official custom or policy defendant promulgated and with which RSCO employees acted in conformity, beyond generalized allegations of uses of excessive force. Dkt. # 41, at 3. Plaintiff's third amended complaint does allege that Wahlgren used excessive force in that he slammed plaintiff to the ground, causing plaintiff to fall on top of his hands that were handcuffed behind his back, which led to plaintiff's back injuries. Dkt. # 34, ¶ 34. Plaintiff also alleges that Wahlgren used the WRAP system in a way that exacerbated his injuries and without clear penological purpose. Id. ¶¶ 35, 36, 42, 78, 79. The Court finds absent from plaintiff's third amended complaint any allegation that defendant promulgated a specific custom or policy that led to violations of plaintiff's Fourth Amendment rights or his injuries. Plaintiff broadly alleges that defendant "maintains a pattern,

practice, and custom regarding use of excessive force." Id. ¶ 54.[2]  Plaintiff also alleges that

Wahlgren acted "in conformity with and pursuant to the practices and policies established by

[defendant], both through [defendant's] own example . . . and in conformance with the established

practice of using excessive force on inmates in the jail with deliberate indifference to their

constitutional rights." Id. ¶ 80.  Yet, nowhere does plaintiff specify what defendant's established

"practices and policies" are, with respect to his claim against defendant for Wahlgren's alleged use

of excessive force. Id. ¶ 80.   To the extent that plaintiff alleges that defendant instituted a policy

of allowing jail staff to use excessive force, he simply recites the elements of a claim against a

municipality.  Because there is no specific policy alleged, the Court does not move to the second step

of the analysis, determining whether plaintiff has sufficiently pled facts to show causation.

    2.    *Assaultive Environment*

Plaintiff brings a second claim of a "pattern or practice," seeking to allege liability against

the municipality for defendant's creation of an "assaultive environment." Dkt. # 34, ¶¶ 88-123.

Essentially plaintiff argues that defendant's policy choice to keep the jail overpopulated and

understaffed led to increased tension between staff and inmates, in turn creating an assaultive

---

[2]    Plaintiff's complaint contains a paragraph outlining what he describes as examples of defendant's "history of failing to discipline officers for excessive use of force." Dkt. # 34, ¶ 54.  These cases are discussed further below as to officer discipline, in the context of plaintiff's failure to supervise claim. See infra.  The Court notes that these cases are generally dissimilar to each other and the case at hand, in that some do not allege uses of excessive force, others concern uses of excessive force in contexts outside of a jail, and the injuries alleged vary widely.  Because plaintiff fails to plead the existence of a specific policy or practice as to his claim for use of excessive force, the Court does not address whether the policy was enacted with deliberate indifference, in that there was a pattern of similar tortious conduct. See Burgaz v. Bd. of Cnty. Comm'rs for Jefferson Cnty., 30 F.4th 1181, 1189-90 (10th Cir. 2022) (outlining that for a claim of municipal liability, the plaintiff must show (1) an official custom or policy, (2) causation, and (3) deliberate indifference).

environment, which led to violations of plaintiff's constitutional rights and his subsequent injuries. Dkt. # 40, at 6.  Even if the Court accepts as true plaintiff's allegations that the jail in which plaintiff was held was overcrowded and that defendant promulgated a policy of maintaining the jail over its allowable capacity, plaintiff repeatedly asks the Court to "infer" or "bridge" the gap between an official policy of overcrowding and the violations of plaintiff's constitutional rights.  Dkt. # 40, at 6; Dkt. # 34, ¶¶ 90, 93.  "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not to be held liable solely for the actions of its employees."  Brown, 520 U.S. at 405.  It is for this reason that the alleged custom or policy "must be 'closely related to the violation of the plaintiff's federally protected rights.'"  Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 770 (10th Cir. 2013) (quoting MARTIN A. SCHWARTZ, SECTION 1983 LITIGATION CLAIMS AND DEFENSES § 7.12[B] (2013), Westlaw SNETLCD).  Plaintiff does not argue that overcrowding, unto itself, is unconstitutional.[3]  Plaintiff's theory of causation requires the Court to cross a "short bridge" from the policy choice by defendant to maintain the jail above the allowable capacity, to increased tensions between inmates and jail

---

[3]     Although the Court accepts as true plaintiff's allegations that the jail, in which plaintiff was held, was overcrowded, the Tenth Circuit has stated that, with respect to the Eighth Amendment's objective prong, "overcrowding alone is not 'sufficiently serious' to establish a constitutional violation."  Stevenson v. Whetsel, 52 F. App'x 444, 446 (10th Cir. 2002) (citing Rhodes v. Chapman, 452 U.S. 337, 348-49 (1981)); see also Rhodes v. Chapman, 452 U.S. 337, 348 (1981).  Analyses of excessive uses of force differ under the Eighth and Fourth Amendments.  Contrast Hudson v. McMillian, 403 U.S. 1, 6 (1992) (Eighth Amendment requiring a showing that force was applied maliciously and sadistically to cause harm) with, Graham, 490 U.S. at 397 (Fourth Amendment requiring a showing that  force was applied in a way that was objectively unreasonable in light of the facts and circumstances confronting the officers at the time).  The Court does not rely on the Tenth Circuit's analysis of overcrowding in the Eighth Amendment context, but it notes that overcrowding alone may not rise to the level of a constitutional violation in certain circumstances.

staff.  Dkt. # 40, at 6.  Plaintiff then argues that there is another "short bridge" the Court must cross between the increased tensions as a result of overcrowding and the creation of an assaultive environment.  Id.  Plaintiff then needs the Court to cross yet a third "short bridge" between the assaultive environment and the constitutional violations at issue here.  Id.  With each new bridge, however short,  plaintiff asks the Court to cross to get from the facts alleged to the constitutional violations pled, causation becomes more distant.  In short, his allegations are simply too attenuated to be "closely related" and for liability to attach to the municipality.[4]  Plaintiff attempts to minimize that distance by reciting the causation element of the claim, alleging that the policy was the "moving force" behind the constitutional violation and that defendant's conduct is a "direct causal connection" between the municipality and Wahlgren's actions.  See Dkt. # 32, ¶¶ 106, 121.  Yet, he fails to sufficiently allege how his stated injury was closely related to the policy defendant maintained as measured by the "rigorous standards of culpability and causation " applicable here.  Brown, 520 U.S. at 405.  Given that "Congress did not intend § 1983 liability to attach where . . . causation was absent," plaintiff has not sufficiently pled that a policy or custom promulgated by defendant actually caused a deprivation of plaintiff's constitutional rights under the Fourth Amendment.  See Monell, 436 U.S. at 692.

---

[4]    The parties discuss the case Buchanan v. Turn Key Health Clinics, LLC, No. 22-7029, 2023 WL 6997404 (10th Cir. Oct. 24, 2023), for the proposition that a court rejected the argument that overcrowding and understaffing were, in that case, not found to be causally connected to a denial of medical care in a jail setting.  Dkt. # 38, at 10; Dkt. # 40, at 11.  The parties disagree as to its bearing on this case.  The Court observes that there the district court found there to be an insufficient of showing to prove causation, between the policy of overcrowding/understaffing the jail and plaintiff's injuries.  In essence, the factual record before that court on summary judgment left open the possibility that jail nurses simply did not believe plaintiff was in an emergency situation, rather than that a policy of understaffing was the moving force behind the deprivation of access to medical care.  See Buchanan, 2023 WL 6997404, at *9-10.  The Tenth Circuit affirmed. Id.

### 3.    *Denial of Medical Care*

Plaintiff also asserts a claim under § 1983 for the alleged violation of his Fourteenth Amendment right to be free from cruel and unusual punishment as a pretrial detainee, in that defendant failed to provide him with timely access to medical care.  U.S. Const. amend XIV.  The Eighth Amendment, as applied to pretrial detainees via the Fourteenth Amendment, "imposes a duty on prison officials to provide humane conditions of confinement including adequate food, clothing, shelter, sanitation, medical care, and reasonable safety from serious bodily harm."  Tafoya v. Salazar, 516 F.3d 912, 916 (10th Cir. 2008).  To establish a Fourteenth Amendment violation, a plaintiff must demonstrate that a prison official acted with "deliberate indifference" by knowing and disregarding an excessive risk to an inmate's health or safety.  Sealock v. Colorado, 218 F.3d 1205, 1209 (10th Cir. 2000); Farmer v. Brennan, 511 U.S. 825, 837 (1994).  Courts in the Tenth Circuit examining allegations of violations of a pretrial detainee's Fourteenth Amendment right to medical treatment apply a two-part test to determine whether a plaintiff has alleged deliberate indifference to an inmate's serious medical needs.  Quintana v. Santa Fe Cnty. Bd. of Comm'rs, 973 F.3d 1022, 1028 (10th Cir. 2022).  A plaintiff alleging deliberate indifference to a substantial risk of harm must allege both an objective component, that the deprivation was "sufficiently serious," and a subjective component, that the prison official "knows of and disregards an excessive risk to inmate health or safety."  Sealock, 218 F.3d at 1209 (quoting Farmer, 511 U.S. at 834).

Plaintiff alleges that defendant implemented a list of inadequate healthcare policies, including inadequate medical screening, untimely exams and treatment, improper approval or denial of medical care by prison staff who are not medical professionals, maintaining an impermissible policy of walking injured inmates out of jail, and inadequately training prison staff on proper medical

12

treatment and classification.  Dkt. # 34, ¶ 126.  Although plaintiff's third amended complaint contains a litany of assertions as to the facility's inadequacies, it offers no connection to plaintiff's injuries beyond formulaic allegations—that defendant maintained the above-listed policies, defendant ratified and approved these policies despite deliberate indifference to defendant's medical needs, that"[t]here is an affirmative link between the unconstitutional acts of [defendant's] deputies and [his] adoption and maintenance of the policies, practices and customs," and that "[a]s a direct and proximate result of the policies, practices, and customs, [plaintiff] suffered the injuries and damages as alleged herein."  Id. ¶¶ 127-34.  With these allegations, plaintiff meets neither the objective prong nor the subjective prong required to survive a motion to dismiss for failure to state a claim.

For a condition to be sufficiently serious under the objective prong, plaintiff must show that the medical need is "sufficiently serious," in that the condition "has been diagnosed by a physician as mandating treatment or . . . is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  Oxendine v. Kaplan, 241 F.3d 1272, 1276 (10th Cir. 2001) (alteration in original) (quoting Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999)).  Plaintiff alleges that he "beg[ged] the jail staff and nurses for medical care," which was repeatedly refused.  Dkt. # 34, ¶¶ 39-44.  Although plaintiff states that he made known that he could not feel his legs, he notes that the staff, deferring to Wahlgren, determined he did not require medical assistance or hospitalization until after three days.  Id. ¶¶ 42-44.  Even accepting as true all of plaintiff's allegations, it is unclear how not seeking immediate medical attention for an inmate claiming to have limited use of his legs following an altercation rises to the level of a "substantial risk of harm" akin to the onset of gangrene in a newly severed finger (Oxendine v. Kaplan, 241 F.3d 1272 (10th Cir.

2001)) or severe chest pains consistent with a heart attack (Sealock, 218 F.3d 1205; Mata v. Saiz, 427 F.3d 745 (10th Cir. 2005)).  Certainly, a back injury can be sufficiently serious that even a lay person would easily recognize the need for medical attention, but plaintiff does not allege facts to show that he made known that his back injury was sufficiently serious.  Sealock, 218 F.3d at 1209; Hunt v. Uphoff, 199 F.3d 1220, 1224 (10th Cir. 1999).  Ultimately, plaintiff merely states that he "suffered physical injuries, mental and physical pain, suffering, and other damages and losses"; in other words, plaintiff asserts generic allegations as to the injuries he suffered as a result of the altercation with Wahlgren.  Dkt. # 34, ¶¶ 86, 84.  Plaintiff also fails to allege that a denial of access to medical treatment caused him injury—or even additional pain or discomfort—beyond the injuries he states that he initially suffered.

Aside from denial of access to medical care, delayed access to medical care can, unto itself, also constitute a violation of the Eighth Amendment, as applied to pretrial detainees through the Fourteenth Amendment.  Hunt, 199 F.3d at 1224 (quoting Grant v. Bernalillo Cnty. Detention Ctr., 173 F.3d 863 (10th Cir. 1999) (unpublished)).  A delay is found to violate an inmate's constitutional rights when it is apparent that delay would exacerbate the inmate's medical problems, usually resulting in lifelong handicap or permanent loss.  Id.  Plaintiff argues that the decision to delay medical treatment made by "[u]nqualified deputies" was "the driving force behind part of [plaintiff's] injuries."  Dkt. # 40, at 11 (citing to nothing).  However, what "part" of plaintiff's injuries were caused by a delay in medical treatment, the magnitude of that "part" of plaintiff's injuries, and the causal connection between the delay in medical treatment and that "part" of plaintiff's injuries are all facts left un-pled.  As the Court has no basis on which to determine whether plaintiff's medical need was sufficiently serious or whether the delay exacerbated his injuries, it

cannot find that the denial or delay in seeking medical care for plaintiff was deliberately indifferent under the objective component of the analysis.

Even if plaintiff had met the objective component, plaintiff fails to allege sufficient facts to meet the subjective component of the analysis. Plaintiff must also show that the official, or here the municipality, acted or failed to act despite knowledge of a substantial risk of serious harm, akin to criminal recklessness. Booker, 745 F.3d at 430; Farmer, 511 U.S. at 837. In essence, defendant must be "aware of the facts from which the inference of a substantial risk of serious harm could be drawn and also draw that inference." Lucas, 58 F.4th at 1137. It is with respect to this component that plaintiff alleges that institutional policies caused jail staff to ignore plaintiff's pleas for medical care and to covertly under-report the severity of his injuries by walking him to the jail exit. See, e.g., Dkt. # 34, ¶¶ 42, 47. Plaintiff does allege that he told the nurses and jail staff that he could not move or feel his legs while in the WRAP and restraining chair. Id. ¶¶ 37-42. However, it remains unclear whether plaintiff expressed that he was in pain or that he was suffering in any way. The Court notes that the restraining chair and WRAP's purpose is to incapacitate, and as the names suggest, restrain the inmate, which would naturally involve immobilizing an inmate's legs. The fact that plaintiff's legs were immobile is not clearly a result of any injury, rather than the simple fact that he was restrained. Similarly, even though plaintiff states that jail staff accompanied plaintiff to the jail exit, following his bond posting, by supporting him to walk out of the jail rather than escorting him in a wheelchair, he does not show that this act either led to injury or exacerbation of injury, or that jail staff knew of a substantial risk of harm that walking him to the exit posed but that they ignored.

Taking as true all non-conclusory factual allegations contained in plaintiff's third amended complaint, the Court finds that plaintiff has not pled sufficient facts to show that he suffered from

any injury as a result of a denial or a delay in medical treatment, nor that the denial or delay was the result of a municipal policy or custom that defendant promulgated in spite of his knowledge that there was a substantial risk of serious harm.  For these reasons, plaintiff fails to state a claim upon which relief can be granted as to his Fourteenth Amendment claim for denied or delayed access to medical care.

        4.    *Failure to Train*

Plaintiff brings two final claims against defendant in his official capacity, for failure to train and failure to supervise.  Dkt. # 34, ¶¶ 135-52, 153-71.  With respect to a claim for failure to train, in very limited circumstances can a municipality's decision not to train employees about their legal duty to avoid violating individuals' constitutional rights rise to the level of an official government policy under § 1983.  City of Canton v. Harris, 489 U.S. 378, 388-89 (1989).  To show that a municipality is liable for a failure to train or failure to supervise, a plaintiff must show that an official with policymaking authority promulgated a policy or custom by failing "to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused."  Bryson v. City of Okla. City, 627 F.3d 784, 788 (10th Cir. 2010) (quoting Brammer-Hoelter, v. Twin Peaks Charter Acad., 602 F.3d 1175, 1189-90 (10th Cir. 2010)).  A claim of municipal liability under a theory of either failure to adequately train or failure to supervise employees requires a plaintiff to show that the failure resulted from "deliberate indifference," that "when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, . . . it consciously or deliberately chooses to disregard the risk of harm."  Barney v. Pulsipher, 143 F.3d 1299, 1307 (10th Cir. 1998).  Actual or constructive notice can be shown through a "pattern of tortious conduct"; however, in a "narrow

16

range of circumstances," deliberate indifference may be found in just a single instance in which "a violation of federal rights is a 'highly predictable' or 'plainly obvious' consequence of a municipality's action or inaction, such as when a municipality fails to train an employee in specific skills needed to handle recurring situations, thus presenting an obvious potential for constitutional violations." Id. at 1307-08 (citing Brown, 520 U.S. at 409). "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." Connick v. Thompson, 563 U.S. 51, 61 (2011). The municipality can incur liability for a failure to train only upon proof of deliberate indifference, which is a "stringent standard of fault." Brown, 520 U.S. at 410 (1997).

Plaintiff alleges that defendant promulgated policies, practices, and customs of "inadequate or nonexistent training of deputies in the jail regarding deescalation, adequate use of force, appropriate use of suicide watch, referral for medical treatment, and . . . the [WRAP] and restraint chair." Dkt. # 34, ¶ 139. Defendant argues that plaintiff fails to state a viable failure to train claim as to these policies, practices, and customs because plaintiff fails to show deliberate indifference, specifically that defendant had notice of the need for different or additional training. Dkt. # 38, at 13. In the absence of either similar incidents or prior complaints, according to defendant, plaintiff fails to show any pattern of tortious conduct. Id. at 14. In support of a theory that the municipality had actual or constructive notice of its failure to train its employees as to the custom, practices, and policies at issue, plaintiff cites broadly to his allegations as to plaintiff's interactions with Wahlgren and jail staff. Dkt. # 40, at 12. He also directs the Court to a paragraph in his third amended complaint containing citations to six complaints, which contain allegations of law enforcement

officials associated with the RCSO using excessive force or denying inmates medical care.[5]   Dkt. # 34, ¶ 54.   However, the complaints cited contain few factual parallels to the facts alleged here, beyond the general contours of either or both Fourth and Fourteenth Amendment claims and ties to the RCSO.   They confirm little more that the municipality should have foreseen the possibility of suit for excessive force or denying inmates medical care, not that any specific training on any of the enumerated policies or practices was lacking.[6]   Even if the Court accepts as true the well-pled allegations in plaintiff's third amended complaint, including that jail staff received no or inadequate training as to specific policies or customs including use of suicide watch or the WRAP, plaintiff fails to demonstrate the existence of actual or constructive notice that its failure to train was substantially

[5]   As defendant responds, of the six complaints cited, four settled with no clear admission of liability on the part of RCSO.   See, e.g., Paul v. Walton, No. 18-CV-357-JED-FHM (N.D. Okla. Feb. 8, 2020) (stipulating dismissal with prejudice a complaint alleging that defendant personally slammed plaintiff's head into a door and used a tactical maneuver to subdue plaintiff); Garza v. Walton, No. 16-CV-147-CVE-PJC (N.D. Okla. Nov. 30, 2016) (stipulating dismissal with prejudice a complaint alleging denial of insulin shots for a jail detainee who was then "face slammed" on the floor of his cell by an officer Fleming); Sneed v. Lee, No. 19-CV-399-CVE-JFJ (N.D. Okla. April 24, 2020) (stipulating dismissal with prejudice a complaint alleging that, while in jail, plaintiff was slammed onto a concrete floor and placed in the WRAP by a deputy Davis); Ibarra v. Lee, No. 20-CV-598-TCK-JFJ (N.D. Okla. Dec. 10, 2025) (stipulating dismissal with prejudice a complaint alleging that a deputy Lee unlawfully arrested and attacked Jorge Jose Martinez in his home, shooting him and causing his death).   One of the complaints cited has no citation or identifying information the Court can use to locate the details of the case or its outcome.   Finally, one case remains pending.   Jolliff v. Walton, No. 24-CV-65-JCG-SH (N.D. Okla. May 20, 2026), Dkt. # 87 (the Court entering a scheduling order, with trial scheduled for September 2027).

[6]   Beyond the factual dissimilarities, as other courts in this circuit have observed, a complaint alleging use of excessive force or denial of medical care, without more, does little to show the existence of a custom or policy and will not necessarily substantiate a showing of actual or constructive notice to support a failure to train claim.   See, e.g., Gantos v. City of Colo. Springs Police Dep't, No. 07-CV-36-REB-CBS, 2008 WL 496291, at *9 (D. Colo. Feb. 20, 2008); Bridges v. Wilson, No. 15-CV-126-GKF-PJC, 2017 WL 11589351, at *6 (N.D. Okla. Jan. 12, 2017); Trujillo v. Campbell, No. 09-CV-3011-CMA-KLM , 2012 WL 3609747, at *7-8 (D. Colo. Aug. 22, 2012).

certain to result in a constitutional violation, and it consciously or deliberately disregarded the risk of harm. See Barney, 143 F.3d at 1307.

In the alternate, plaintiff argues that the violations of plaintiff's constitutional rights in this case were such predictable and obvious consequences of defendant's failure to train his employees, that deliberate indifference may be found from this single instance. Dkt. # 40, at 13. Plaintiff specifically cites to Valdez v. Macdonald, 66 F.4th 796 (10th Cir. 2023), which requires a plaintiff pursuing a single-incident failure-to-train claim to show "(1) 'the existence of a [municipal] policy or custom involving deficient training'; (2) an injury caused by the policy that is 'obvious' and 'closely related'; and (3) that the municipality adopted the 'policy or custom with deliberate indifference' to the injury." Id. at 816-17 (quoting Lance v. Morris, 985 F.3d 787, 800 (10th Cir. 2021)). Plaintiff does allege a list of municipal "policies" (discussed above) on which employees were deficiently trained. Dkt. # 34, ¶ 139. Plaintiff does not, however, allege that any of these specific policies caused his injuries in a way "obvious" and "closely related" to those policies. For example, it is unclear from plaintiff's allegations that the WRAP requires specific types of training for use, or that it was inappropriately deployed in this instance. It is also unclear that plaintiff's alleged injuries, which he states occurred prior to use of the WRAP, were a highly predictable or plainly obvious consequence of defendant's choice to insufficiently train or entirely fail to train employees on its use. Plaintiff merely asserts is that "the violation of [plaintiff's] federally protected rights was highly predictable and plainly obvious," given that it is "not uncommon" for individuals in jail to require medical attention, "become churlish or sullen while interacting with officers," or "invoke their right to counsel." Id. ¶ 146. Plaintiff does not show that defendant's failure to train jail staff on any of the policies listed highly predictably or plainly obviously led to violations of

plaintiff's Fourth or Fourteenth Amendment rights.  Plaintiff fails as a matter of law to meet the stringent pleading standard required of a failure-to-train claim against a municipality.  See Brown, 520 U.S. at 410 (1997).

Like plaintiff's other claims, even if plaintiff had shown that the failure to train resulted from deliberate indifference, he has not pled any facts to connect that failure to train with his alleged injuries, beyond threadbare recitals of law.  Having shown neither a pattern of similar constitutional violations by untrained employees nor a need to train officers that is so obvious that the need for training could be characterized as "deliberate indifference," plaintiff does not state a claim for failure to train.  See Valdez, 66 F.4th at 811-12.

5.      *Failure to Supervise*

Finally, plaintiff alleges a claim for failure to supervise employees.  Dkt. # 34, ¶¶ 153-71. Specifically, plaintiff underscores defendant's failure to discipline Wahlgren following the use of force and allegedly misrepresenting what occurred in a write-up following the incident.  Id. ¶ 161. As defendant points out, even assuming that plaintiff's claims are true—that Wahlgren was not disciplined following the incident and did misrepresent the facts of the incident in a report—plaintiff fails to connect the failure to discipline or misrepresentation to plaintiff's injuries.  Dkt. # 38, at 14. Failure to supervise claims are analyzed under the same standard as failure to train claims.  See supra; see also Whitewater v. Goss, 192 F. App'x 794, 797 (10th Cir. 2006)[7] ("We treat allegations of failure to supervise (which often may be indistinguishable from failure to train) the same way."). To prevail on a claim for failure to supervise, a plaintiff must show deliberate indifference, either

---

[7]      Unpublished decisions are not precedential, but they may be cited for their persuasive value. See FED. R. APP. 32.1; 10TH CIR. R. 32.1.

through a pattern of unconstitutional behavior or that a constitutional violation is a highly predictable or plainly obvious consequence of the failure to supervise. Barney, 143 F.3d 1307-08.

Plaintiff argues that a pattern exists because following the six incidents of alleged uses of excessive force and denial of medical care cited in plaintiff's third amended complaint, no individual involved in those cases was reprimanded. Dkt. # 34, ¶ 54. As was the case with plaintiff's failure to train claim, plaintiff's third amended complaint offers no specific factual allegations of a pattern of failing to reprimand or otherwise supervise RCSO employees following incidences with similarities to the facts at issue here. Plaintiff shows that officers were not reprimanded following altercations between officers and suspects at, for example, a public meeting and in a suspect's home during an arrest. The widely disparate contexts and stark factual dissimilarities among the cases cited and the case at hand cannot support a pattern of tortious conduct. Plaintiff also alleges that this single incident can support a failure to supervise claim because, in failing to discipline employees "despite the known and obvious consequences of doing so," defendant acted with "deliberate indifference to inmates' federally protected right to safety." Id. ¶ 164. This recital of the legal requirement for a showing of deliberate indifference fails to specify in what ways failing to discipline employees led to the specific violations at hand, or why they were obvious or even foreseeable. Plaintiff's third amended complaint consists of threadbare recitals of the elements of the claim, lacking the requisite specificity. Taking as true all well-pled factual allegations, the Court finds that plaintiff has not pled sufficient facts to survive a motion to dismiss for failure to state a claim as to his failure to supervise claim.

**B.      Plaintiff's Motion to Amend**

As the Court has determined plaintiff's claims are subject to dismissal, plaintiff "respectfully

requests the opportunity to amend his [third amended c]omplaint." Dkt. # 40, at 15. Defendant objects. Dkt. # 38, at 15-16. Citing to Federal Rule of Civil Procedure 15(a)(2), defendant points out that leave to amend may be freely granted when justice so requires. However, denial of a motion to amend is warranted "upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." Frank v. U.S. West, Inc., 3 F.3d 1357, 1365 (10th Cir. 1993); see also Foman v. Davis, 371 U.S. 178, 182 (1962). A court is "justified in denying [a] motion to amend if the proposed amendment could not withstand a motion to dismiss or otherwise fails to state a claim. " Ketchum v. Cruz, 961 F.2d 916, 920 (10th Cir. 1992).

Defendant argues that, at this time, offering plaintiff an opportunity to file a fourth amended complaint would be both futile and unduly prejudicial. On these points, the Court agrees. Plaintiff has now had four opportunities to state his claims, Dkt. # 2; Dkt. # 10; Dkt. # 22; Dkt. # 34, including the opportunity to submit an amended complaint following briefing on a previous motions to dismiss, Dkt. # 25; Dkt. # 29; Dkt. # 31; Dkt. # 32; Dkt. # 34. It is unclear to the Court how a newly amended complaint would not be subject to dismissal under Rule 12(b)(6). See Mountain View Pharmacy v. Abbott Laby's, 630 F.2d 1383, 1389 (10th Cir. 1980). Accepting as true all of the allegations in plaintiff's third amended complaint, the Court has no basis on which to believe plaintiff "has a reasonable likelihood of mustering factual support for [his] claims." Ridge at Red Hawk, LLC v. Schneider, 493 F.3d 1174, 1177 (10th Cir. 2007). Even if it were not futile, amendment would prejudice defendant. "Undue prejudice" in the context of Rule 15 has been interpreted to mean anything that "unfairly affects the defendant[] 'in terms of preparing their defense to the amendment.'" Minter v. Prime Equip. Co., 451 F.3d 1196, 1208 (10th Cir. 2006).

Defendant has now answered three of plaintiff's complaints, preparing defenses each time plaintiff has been permitted to amend.  Dkt. # 14; Dkt. # 25; Dkt. # 38.  Further amendment would cause unfair prejudice to defendant, and on these grounds the Court denies plaintiff's request for leave to amend.

**IT IS THEREFORE ORDERED** that defendant's motion to dismiss for failure to state a claim (Dkt. # 38) is **granted**.

**IT IS FURTHER ORDERED** that plaintiff's request for leave to file a fourth amended complaint (Dkt. # 40, at 15) is **denied**.

**DATED** this 25th day of June, 2026.

_____

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE